Vinh Quang NGUYEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–00–00148–CR.

Court of Appeals of Texas, Texarkana.

Submitted May 21, 2001.

Decided May 24, 2001.

Rehearing Overruled July 31, 2001.

50

Clinard J. Hanby, Woodlands, for appellant.

Peter C. Speers, III, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty.–Appellate Section, Conroe, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

OPINION

CORNELIUS, Chief Justice.

Vinh Quang Nguyen was convicted by a jury of unlawful possession of a firearm by a felon. The trial court assessed his punishment at eight years' confinement. Nguyen challenges the legal and factual sufficiency of the evidence.

The record shows the following. Around 1:00 a.m., Corporal James Armatys was posted on Interstate 45 doing drug interdiction work. He was driving a marked patrol car, which did not have overhead lights. The warning lights in Armatys' car were located on the mirrors, above the mirrors, and in the grill. The car also had "wig-wags," where the left and right headlights each flash intermittently. In addition, the car was equipped with a spotlight containing an "aircraft landing light" on the driver's side door.

Armatys testified that he saw a vehicle being driven at a speed of eighty-two miles per hour in a sixty-five mile-per-hour zone. Armatys turned his car around, began pursuing the vehicle, and activated his warning lights. Armatys followed the vehicle with his warning lights activated for about one half to three quarters of a mile before the driver of the car pulled over. Because the other car did not immediately slow down and pull over, Armatys activated his spotlight and shined it through the car's back window. Armatys testified that he clearly saw the passenger lean between the front seats to the back of the car. The driver then pulled to the side of the road.

Armatys testified that he approached the car and asked the driver for his driver's license and proof of insurance. The driver "attempted to wake up the passenger," to ask him for his proof of insurance. The officer testified that the passenger was not asleep when he was following the car and implied that he was feigning sleep.

Armatys identified the passenger as Nguyen. The car belonged to Nguyen's brother.

Armatys testified that he questioned the driver and Nguyen separately about their purpose for traveling. The driver told him "they were going to go-he was getting directions from Mr. Nguyen to go to his [Nguyen's] friend's in Houston." Nguyen told him "they were going to Bellaire [in Houston] because the driver had flown in to see some of [the driver's friends]."

Armatys then asked for and received Nguyen's written consent to search the vehicle. Armatys testified that he did not find any clothing or luggage in the vehicle. Under the removable rear seat and directly behind the driver's seat, the officer found a pistol. The seat was fully in place, and the gun was not exposed to view. Armatys demonstrated the position of the gun under the seat and opined that it was consistent with a passenger having placed the gun under the seat. Subsequent investigation revealed the gun was stolen during a home burglary involving five Asian males who broke into the home of a Vietnamese family in Arlington, Texas, where Nguyen lives. The evidence shows that Nguyen is also Vietnamese.

On cross-examination, Armatys admitted he followed the vehicle for only twenty seconds before the driver pulled over. He also admitted that he never saw a gun in Nguyen's hands. Armatys further admitted it might not be as easy for Nguyen, who is much smaller than Armatys, to lift the back seat while reaching around from the front seat, as it was for Armatys to lift the back seat from a standing position at the rear of the car.

■ In his first issue on appeal, Nguyen contends the State failed to present sufficient evidence that he possessed the firearm. In reviewing the legal sufficiency of the evidence, we look to see whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Lane v. State,* 933 S.W.2d 504, 507 (Tex.Crim.App.1996). We evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Johnson v. State,* 871 S.W.2d 183, 186 (Tex. Crim.App.1993).

■ Under a factual sufficiency analysis, we examine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State,* 23 S.W.3d 1, 9 (Tex.Crim.App.2000); *see also Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Accordingly, we reverse the fact finder's determination only to arrest the occurrence of a manifest injustice. *Johnson,* 23 S.W.3d at 12. Otherwise, we must give due deference to the fact finder's determinations concerning the weight and credibility of the evidence.

■ We analyze the sufficiency of the evidence to prove possession of a firearm by a felon under the rules adopted for determining the sufficiency of the evidence in cases of possession of a controlled substance. *Corpus v. State,* 30 S.W.3d 35, 37 (Tex.App.—Houston [14th Dist.] 2000, pet. filed). Therefore, to support a conviction for possession of a firearm, the State must show (1) that the accused exercised actual care, control, or custody of the firearm, (2) that he was conscious of his connection with it, and (3) that he possessed the firearm knowingly or intentionally. *See*

*Brown v. State,* 911 S.W.2d 744, 747 (Tex. Crim.App.1995); *Jones v. State,* 963 S.W.2d 826, 830 (Tex.App.—Texarkana 1998, pet. ref'd).

The evidence used to satisfy these elements can be direct or circumstantial. *See Brown v. State,* 911 S.W.2d at 747; *Jones v. State,* 963 S.W.2d at 830. Whether direct or circumstantial evidence is used, the state must establish that the accused's connection with the firearm was more than just fortuitous. *See Brown v. State,* 911 S.W.2d at 747; *Jones v. State,* 963 S.W.2d at 830. However, when the firearm is not found on the accused's person or is not in the accused's exclusive possession, additional facts must affirmatively link the accused to the contraband. *See Jones v. State,* 963 S.W.2d at 830. The affirmative links ordinarily emerge from an orchestration of several factors and the logical force they have in combination.

Factors that may establish affirmative links include whether: (1) the contraband was in a car driven by the accused; (2) the contraband was in a place owned by the accused; (3) the contraband was conveniently accessible to the accused; (4) the contraband was in plain view; (5) the contraband was found in an enclosed space; (6) the contraband was found on the same side of the car as the accused; (7) the conduct of the accused indicated a consciousness of guilt; (8) the accused has a special relationship to the contraband; (9) occupants of the automobile gave conflicting statements about relevant matters; and (10) affirmative statements connect the accused to the contraband. *Corpus v. State,* 30 S.W.3d at 38.

Nguyen cites *Kyte v. State,* 944 S.W.2d 29 (Tex.App.—Texarkana 1997, no pet.), and *Williams v. State,* 859 S.W.2d 99 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd), as factually similar cases. In *Kyte,* police stopped the appellant and her husband for following too closely, obtained permission to search the vehicle, and found cocaine inside a metal cylinder and in a plastic baggie bound with black tape, both of which were concealed under the carpet near the shift lever. The appellant and her husband were placed in custody, and the appellant was later charged with possession of cocaine. *Kyte v. State,* 944 S.W.2d at 32. The evidence showed that the car belonged to the appellant's ex-husband, and the appellant testified that her ex-husband loaned her the car while he worked on her pickup truck.

We concluded in *Kyte* that the evidence was both legally and factually insufficient to convict. The factors we found significant in *Kyte* were that there was no showing that the drugs were in plain view; that neither the appellant nor her husband owned the vehicle; that there was no evidence that the drugs emitted an odor; that no drug paraphernalia was found on the person of either the appellant or her husband; that neither the appellant nor her husband engaged in any conduct indicating a consciousness of guilt; that there was no showing that the appellant or her husband had a special relationship to the contraband; that neither the appellant nor her husband gave conflicting statements about any relevant matter; that there was no indication of recent consumption of drugs; and that neither the appellant nor her husband made any affirmative statement connecting them to the contraband.

In *Williams,* police responded to a report of narcotics activity near a city intersection. *Williams v. State,* 859 S.W.2d at 100. They stopped the appellant, who they testified matched the description of one of the suspects and who began walking away from them at a fast pace after seeing them. After they informed the appellant that they were investigating narcotics activity, the appellant ran away. They

chased him, lost sight of him momentarily, but then caught up to him after he emerged from behind a house. They testified they saw the appellant "pacing around" behind the house, walking near a large tree, and walking toward a fence near the back end the house. Near the tree, police found a matchbox containing cocaine. In finding the evidence legally insufficient, the court of appeals emphasized that the appellant was not found in personal possession of, or exercising control over, the cocaine; that there was no evidence of furtive gestures toward the cocaine; that the evidence showed the area was known for heavy drug traffic; that other drug suspects had been in the area before; that the appellant did not make any incriminating statements; that no other contraband or drug paraphernalia was found on his person; and that no testimony was presented describing what, if anything, appellant did when he was near the tree.

In *Collins v. State*, 901 S.W.2d 503, 504 (Tex.App.—Waco 1994, pet. ref'd), police raided a home and found the appellant standing in a hallway. Inside one of the bedrooms, police discovered the appellant's brother in possession of a large quantity of illegal narcotics. *Id.* at 504–05. The evidence showed that the house was small; that the appellant was in the house when the search was conducted; that the appellant lived at the house periodically; that the electric bill was in his name; that the drugs were in the bedroom in plain view; and that needles and other drug paraphernalia were found all over the house. *Id.* at 506. Nevertheless, the court of appeals found the evidence legally insufficient because the evidence showed that the drugs were in the appellant's brother's room, and there was no evidence that the appellant had been in that room, that he was under the influence of a controlled substance, that he attempted flight, that he made

furtive gestures, that he made incriminating statements, or that he possessed any contraband on his person.

The facts of this case are distinguishable from the facts of *Kyte, Williams,* and *Collins.* Here there was evidence indicating a consciousness of guilt, unlike in *Kyte.* A rational jury could have concluded beyond a reasonable doubt that the driver delayed pulling the vehicle over until Nguyen had an opportunity to hide the firearm. Armatys testified he saw Nguyen leaning between the driver's and passenger's seats toward the back. The jury could have rationally concluded that Nguyen feigned sleep in order to throw suspicion away from himself. Further, unlike in *Kyte,* the driver and passenger gave somewhat inconsistent statements regarding their reason for traveling.

Also, unlike in *Williams* and *Collins,* there was testimony regarding Nguyen's activity in the area where the contraband was found. Armatys testified that he saw Nguyen reaching toward the back of the car. He also testified that the position of the firearm was consistent with the passenger's putting it under the back seat from the front seat.

As the State observes, the present case is more like the facts of *Corpus v. State.* In *Corpus,* the appellant was stopped for speeding in a car registered to him. *Corpus v. State,* 30 S.W.3d at 37. The officer noticed that the appellant seemed nervous, he took a long time to produce his driver's license and proof of insurance, and he spoke in mumbled tones. The officer also observed the appellant and his passenger moving and reaching around inside the passenger's compartment and checking their rearview mirrors to keep an eye on him. A search of the vehicle pursuant to the appellant's consent revealed a loaded revolver in the map pocket behind the

passenger's seat. The court of appeals concluded the evidence was legally sufficient to support the appellant's conviction for unlawful possession of a firearm by a felon because the firearm was within the appellant's reach, was more conveniently accessible to him than to the passenger, and because the jury could have concluded that appellant's actions could be seen as reflecting a consciousness of guilt.

■ In this case, as in *Corpus*, the firearm was more accessible to the passenger than to the driver. In addition, the actions of the driver and Nguyen are consistent with the conclusion that Nguyen was conscious of his guilt. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence is legally sufficient to prove possession.

■ We conclude, however, that under a neutral review of the evidence, the evidence is factually insufficient to convict Nguyen. The car did not belong to Nguyen; it belonged to Nguyen's brother. Armatys followed the car for only twenty seconds before the driver pulled over. Armatys testified that his car did not have overhead lights and admitted that the driver did not increase his speed as Armatys followed him. Armatys further testified that he did not see the gun in Nguyen's hands and the State was unable to obtain a useable fingerprint from the firearm.

The State emphasizes the inconsistencies in the explanations given by Nguyen and the driver regarding their reason for traveling. However, those explanations are consistent in the basic details. Both men told the officer they were traveling to the same area in Houston. The only real inconsistency is that Nguyen told the officer they were going to see the driver's friends, while the driver told the officer they were going to see Nguyen's friends. As Nguyen observes, this difference is easily explained by the differing perception of the two men regarding who was closer to the people they were going to see in Houston.

The State also emphasizes that there was no luggage in the car. Yet Armatys never testified that either man told him the intended duration of their stay in Houston. It is consistent with the evidence that the men made a spur-of-the-moment decision to visit their friends in Houston and did not intend to remain there long. We sustain Nguyen's factual sufficiency challenge.

In his second issue on appeal, Nguyen contends the evidence is legally and factually insufficient to prove he was in possession of a firearm before the fifth anniversary of his release from community supervision. The evidence shows that Nguyen was convicted of a felony in California on April 30, 1993, and placed on three years' community supervision. Both parties acknowledge that Nguyen's term of community supervision was scheduled to end on April 29, 1996, less than five years before January 6, 1999, the date alleged in the indictment. Nguyen asserts, however, that the State was required to prove he was not released from supervision before its scheduled termination. In other words, Nguyen argues that because the State alleged he committed the offense on or about January 6, 1999, the State had to prove he was not released from his community supervision before January 6, 1994.

The statute makes it an offense for a person who has been convicted of a felony to possess a firearm (1) at any location from the time of his conviction until the fifth anniversary of his release from prison or from community supervision, and (2) thereafter, at any location except the premises where he lives. TEX.PEN.CODE ANN. § 46.04 (Vernon 1994). The law is

intended to prevent felons from being in possession of a firearm, but creates an exception that allows felons to possess a firearm five years after their release from prison or community supervision, and only at the premises where the felon lives. *State v. Mason,* 980 S.W.2d 635, 639 (Tex. Crim.App.1998).

The statute does not require the state to prove the date the defendant was released from prison or supervision unless the defendant is in possession of a firearm at the premises where he lives. In such a case, the state must prove that the defendant has been released from prison or supervision for less than five years.

The indictment alleged that Nguyen intentionally or knowingly, possessed a firearm, after being convicted of a felony offense on April 30, 1993, and before the fifth anniversary of his release from community supervision. *See* TEX.PEN.CODE ANN. § 46.04(a). The question is, having alleged that Nguyen was in possession of a firearm before the fifth anniversary of his release from supervision, was the State required to prove that fact?

■ We measure the sufficiency of the evidence against a hypothetically correct jury charge. *Curry v. State,* 30 S.W.3d 394, 404 (Tex.Crim.App.2000). A hypothetically correct jury charge is one that (1) accurately sets out the law, (2) is authorized by the indictment, (3) does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and (4) adequately describes the particular offense for which the defendant was tried.

■ Furthermore, the Texas Court of Criminal Appeals has held that the hypothetically correct jury charge need not incorporate allegations that give rise to immaterial variances between the indictment and the proof. *Gollihar v. State,* 46 S.W.3d 243, 256–57 (Tex.Crim.App.2001). A variance between the wording of the indictment and the evidence presented is fatal only if it is material and prejudices the defendant's substantial rights, i.e., if the indictment fails to inform the defendant of the charge against him sufficiently to allow him to prepare an adequate defense and if the defendant would be subjected to the risk of being prosecuted later for the same offense. *Id.* at 257–58, at *38.

■ We conclude that a hypothetically correct jury charge would not require the State to prove the date of Nguyen's release from community supervision. As mentioned previously, the statute prohibits felons from possessing a firearm. Thus, it is simply irrelevant when Nguyen was released from community supervision, unless the State alleged that he was in possession of a firearm at the premises where he lived. A jury charge that required the State to prove when Nguyen was released from community supervision would not be one that accurately sets out the law or adequately describes the particular offense, but would be one that unnecessarily increases the State's burden of proof.

In addition, the indictment adequately informed Nguyen of the charges against him and sufficiently allowed him to prepare a defense. Finally, we do not discern that Nguyen was at any risk of being prosecuted later for the same offense if the jury had acquitted him. The State proved that Nguyen had been convicted of a felony and that he was not at the premises where he lives. On this basis, the evidence was sufficient to prove the offense. We overrule Nguyen's second issue on appeal.

Nevertheless, because we have concluded that the evidence is factually insufficient to prove that Nguyen possessed the firearm, we reverse the judgment and re-

mand the case to the trial court for a new trial.